**UNITED STATES of America, Appellee,**

v.

**Lowell B. MARCHANT, Appellant.**

**No. 85–1191.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Oct. 4, 1985.

Eugene G. Sayre, Little Rock, Ark., for appellant.

Sandra Cherry, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

The grand jury indicted Lowell B. Marchant on counts of wilfully attempting to evade income tax in the years 1977 (Count I) and 1978 (Count II) and placed the location of those offenses in the Eastern District of Arkansas. The district court in that district transferred the case for trial to the Western District of Arkansas.[1] After conviction on both counts in a jury trial, Marchant appeals the convictions, asserting the following contentions: (1) the district court erred in denying his pretrial motion to dismiss and his trial motion for acquittal for a lack of subject matter jurisdiction on grounds that the conduct relating to the charge occurred in the Western District of Arkansas; (2) the district court erred in failing to dismiss Count I of the indictment as barred by the six-year statute of limitations; (3) the district court erred in admitting evidence of prior wrongful acts and in other evidentiary rulings; (4) the district court erred in its instructions to the jury in not presenting Marchant's theory of the case; (5) the district court erred in failing to discharge an allegedly incompetent juror; and (6) the district court erred in denying Marchant a new trial.

We consider these contentions against the framework of the evidence and procedural history of the case.

## I. BACKGROUND.

During the relevant tax years, 1977 and 1978, Marchant and his wife resided in Mountain Home, which is in the Western District of Arkansas. The Marchants held substantial interests in several business entities, including some Subchapter S corporations, located in Arkansas, Missouri, and Oklahoma. In 1980, the Government began investigating the Marchants' personal tax liability, as well as that of their businesses. On Monday, April 16, 1984, a grand jury returned a two-count indictment, charging Marchant with attempting to evade or defeat a large portion of his 1977 and 1978 income tax by "preparing and causing to be prepared, by signing and causing to be signed, and mailing and causing to be mailed in the Eastern District of Arkansas, a false and fraudulent tax return" in violation of 26 U.S.C. § 7201.

Trial was set in the Eastern District of Arkansas. Marchant entered pretrial motions to dismiss the complaint and indictment for a lack of venue. Preserving these motions, Marchant requested transfer of the case to the Western District of Arkansas under 18 U.S.C. § 3237(b) (1982). The district court duly granted the motion to transfer, but did not rule on the motions to dismiss. After hearing arguments and taking evidence, the District Court for the Western District of Arkansas denied the motions, and the case proceeded to trial before a jury.

At trial, the Government introduced evidence showing that Marchant omitted substantial receipts of money from his 1977 and 1978 tax returns, including interest received on loans, rent received on a building lease, and income received by diverting money to himself from other business entities. After a five-day trial, the jury returned guilty verdicts on both counts of the indictment. The district court sentenced Marchant to one year in jail and assessed a fine of $10,000 on Count I and gave Marchant three years probation on Count II. The court stayed its judgment pending this appeal.

## II. DISCUSSION.

### A. Venue.

Marchant first contends that, because he engaged in no conduct relating to the filing

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas heard pretrial matters. Chief Judge H. Franklin Waters of the United States District Court for the Western District of Arkansas presided at the trial.

of his returns in the Eastern District of Arkansas, that district acquired no jurisdiction over the crime, and that infirmity extended to the actual place of trial on transfer. Indeed, the Government offered no proof that Marchant was even in the district during the relevant time periods. The Government asserts, however, that proof of the preparation of Marchant's tax returns by an accountant within the Eastern District established proper venue there, as well as subject matter jurisdiction.

The Constitution and the federal laws of the United States grant persons the right to be tried in the judicial district in which their offense occurred. U.S. Const. Art. III, § 2; U.S. Const. amend. VI; Fed.R. Crim.P. 18. Questions of venue "are not merely matters of formal legal procedure," but raise "deep issues of public policy." *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944); *Holdridge v. United States*, 282 F.2d 302, 305 (8th Cir.1960). The Government must prove venue in criminal cases by a preponderance of the evidence. *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir.1985).

■ In many instances, all aspects of an offense are not committed within a single district. For these "continuing offenses," 18 U.S.C. § 3237(a) (1982) provides that " * * * any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Under this statute, the locality of a crime for the purpose of venue extends "over the whole area through which force propelled by an offender operates." *United States v. Johnson, supra*, 323 U.S. at 275, 65 S.Ct. at 250.

■ The crime of wilfully attempting to evade or defeat tax liability is completed when the taxpayer files the tax return with the Internal Revenue Service. *See United States v. Habig*, 390 U.S. 222, 223, 88 S.Ct.

926, 927, 19 L.Ed.2d 1055 (1968). Obviously, the taxpayer cannot file the return until it is prepared, signed, and mailed. These preliminary steps often occur in districts other than that in which the taxpayer files the return. In such cases, courts recognize that the violation of section 7201 is a "continuing offense," and the Government can prosecute the taxpayer in the district where the return was prepared, signed, mailed, or filed. *See, e.g., United States v. King*, 563 F.2d 559, 562 (2d Cir.1977), *cert. denied*, 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978); *United States v. Gross*, 276 F.2d 816, 818 (2d Cir.), *cert. denied*, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960); *Holbrook v. United States*, 216 F.2d 238, 239 (5th Cir.1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 605, 99 L.Ed. 1249 (1955); *United States v. United States District Court*, 209 F.2d 575 (6th Cir.1954); *United States v. Goldberg*, 206 F.Supp. 394, 397 (E.D.Pa.1962), *aff'd*, 330 F.2d 30 (3d Cir.), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964).

■ Here, Marchant signed and mailed his tax returns in the Western District of Arkansas. Only his accountant's preparation of the returns occurred in the Eastern District. However, Marchant permitted his accountant to carry false information into the Eastern District and there to prepare and attest returns understating Marchant's tax liability. Marchant therefore propelled a force into the Eastern District as surely as had he personally prepared the returns in that district. Although Marchant's violation of section 7201 was completed in another district, it was set in play within the Eastern District. Consequently, it was a "continuing offense," and, under 18 U.S.C. § 3237(a), venue was proper in the Eastern District.[2]

## B. Statute of Limitations.

Marchant also contends that Count I of the indictment, dealing with his 1977 tax return, is barred by the six-year statute of limitations, 26 U.S.C. § 6531(2) (1982).

---

**2.** In any event, by obtaining transfer of the case to the district of his residence, Marchant avoided any hardship that might be attendant to the trial of that case in a distant district.

Marchant filed his 1977 tax return on April 15, 1978, and the grand jury returned its indictment on April 16, 1984. The district court held that the indictment was timely because Marchant's eleven-day health and pleasure trip to Switzerland in 1983 tolled the statute of limitations for that period of time.

Section 6531 provides that "the time during which the person committing any of the various offenses arising under the internal revenue laws is outside the United States * * * shall not be taken as any part of the time limited by law for the commencement of such proceedings." 26 U.S.C. § 6531 (1982). Marchant argues that the legislative history of this tolling provision indicates that "outside the United States" does not include health and pleasure trips. The Government advocates a strict construction of the phrase, such that Marchant's trip "outside the United States" tolled the statute of limitations for the eleven days.

As originally proposed by the House of Representatives in 1884, the tolling provision applied only to persons "beyond the reach of legal process." H.R. 6370, 48th Cong., 1st Sess., 15 Cong.Rec. 3097 (1884). A Senate Committee changed this language, however, to apply to persons "absent from the district" where the offense occurred. See H.R. 6370, 48th Cong., 1st Sess., 15 Cong.Rec. 5770 (1884). The bill passed with its altered language, 26 U.S.C. § 3748 (1939) (originally enacted as Act of July 5, 1884, ch. 225, 23 Stat. 122 (1884)).

The legislative history of the tolling provision does not reveal the purpose underlying the substitution of "beyond the reach of legal process" for "absent from the district." Congress' apparent intent was to draft the statute in language similar to that in comparable state civil provisions. See Wolfgram, *Tolling the Statute of Limitations in a Criminal Tax Case*, 28

Taxes 53, 55 n. 15 (1950); Note, *Limitation of Actions—Tolling of Period—Criminal Tax Statute Tolled Where Defendant Who Was "Absent From the District" Never Resided Therein*, 66 Harv.L.Rev. 1323, 1323 (1953). Indeed, in 1884, the substance was not changed by the alteration. At that time, a federal court's jurisdiction extended only to the boundaries of the district in which it sat. Consequently, a warrant or summons was effectively served only within the district from which it issued. *See, e.g.*, *Weinberg v. United States*, 126 F.2d 1004, 1006 (2d Cir.1942); *Mitchell v. Dexter*, 244 Fed. 926 (1st Cir.1917). Therefore, a person who was "absent from the district" in 1884 was "beyond the reach of legal process."

In 1946, Congress adopted what is now Fed.R.Crim.P. 4(d)(2), which expressly permits federal criminal process "at any place within the jurisdiction of the United States." "Absent from the district" thus became no longer synonymous with "beyond the reach of legal process." In 1954, however, Congress amended the tolling provision to include its present triggering language, "outside the United States." 26 U.S.C. § 6531 (originally enacted as Act of Aug. 16, 1954, ch. 736, 68A Stat. 815 (1954)). We interpret this amendment as returning the provision to its original meaning of "beyond the reach of legal process." Therefore, persons are "outside the United States" whenever they cannot be served criminal process within the jurisdiction of the United States under Fed.R.Crim.P. 4(d)(2). Consequently, Marchant's trip to Switzerland tolled the statute of limitations for eleven days because during that time he was safe from criminal process. The limitations period of section 3237(a) therefore ran until April 26, 1984, rendering Count I of the April 16, 1984 indictment timely.[3]

---

3. Marchant also claims that, even if the indictment was timely, the four-year delay between the initiation of the Government's investigation on April 16, 1980 and the indictment on April 16, 1984 constitutes prosecutorial dilatoriness in violation of his due process rights. To prevail on this claim, Marchant must show that the

Government intentionally delayed seeking an indictment to gain tactical advantage and that the delay substantially prejudiced his defense. *United States v. Lovasco*, 431 U.S. 783, 788–90, 97 S.Ct. 2044, 2047–49, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 322–24, 92 S.Ct. 455, 464–65, 30 L.Ed.2d 468 (1971); *United*

## C. Admissibility of Evidence of Prior Wrongful Acts.

Marchant additionally argues that the district court improperly allowed the Government to question him on certain 1977 and 1978 house sales, the proceeds of which were not reported on his tax returns for the corresponding years. During cross-examination by the Government, Marchant testified that a check attached to one of the defense exhibits represented proceeds from the sale of his home. He explained that the amount of the check was not reported on his tax return because his accountant had indicated that such amounts were not taxable income. He further testified that he did not recollect omitting any other large amounts from his returns. The Government then began to question Marchant on other unreported house sales made during 1977 and 1978. The district court had barred the Government from pursuing the issue of the house sales during the Government's case because the Government had agreed prior to trial not to present "any evidence of unreported income from house sales in its case in chief." When the matter arose during cross-examination of Marchant, the court ruled the evidence admissible under Rule 404(b) of the Federal Rules of Evidence. The court also specifically found that the probative value of the evidence outweighed any unfair prejudicial effect and, therefore, was not excluded by Rule 403.

■ We observe that the Government's promise not to present evidence of the house sales during its case-in-chief did not obligate it to refrain from using that evidence in cross-examining the defendant during presentation of the defense. We also affirm the district court's rulings that the evidence was admissible under Rule 404(b) and not excluded by Rule 403.

Rule 404(b) excludes evidence of prior wrongful acts when offered to prove that the defendant acted in conformity therewith. Fed.R.Evid. 404(b). The rule permits introduction of this evidence for other purposes, however, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This court has held that evidence of prior wrongful acts is admissible under Rule 404(b) when (1) an issue is raised on which evidence of other crimes may be received; (2) the proffered evidence is relevant to that issue; (3) the evidence is clear and convincing; and (4) the prior acts relate to wrongdoing similar in kind and reasonably close in time to the charge at trial. *United States v. Burchinal,* 657 F.2d 985, 993 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Frederickson,* 601 F.2d 1358, 1365 (8th Cir.), *cert. denied,* 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979). The trial court has wide discretion in ruling on the admissibility of prior wrongful acts. *United States v. Burchinal, supra,* 657 F.2d at 993.

■ In this case, the Government bore the burden of proving that Marchant intended to evade or defeat his 1977 and 1978 income taxes. Marchant's testimony that he had excluded the sale proceeds from his home on his accountant's advice and that he recalled omitting no other large amounts placed the question of intent directly in issue. We conclude that the other house sales made during 1977 and 1978 bore on Marchant's intent and knowledge, issues on which evidence of prior wrongful acts can

States v. Bliss, 735 F.2d 294, 300–01 (8th Cir. 1984); *United States v. Wells,* 702 F.2d 141, 143 (8th Cir.1983). Marchant failed to recite and we have been unable to find any evidence to support Marchant's claim. The Government's investigation was multifaceted, probing not only Marchant's personal tax liability, but also that of his numerous businesses. The complexity of the investigation undertaken by the Government justified its delay in seeking indictment. Nothing in the record reveals that the Government

intentionally timed the admittedly eleventh-hour indictment to gain some tactical advantage. Furthermore, Marchant has failed to demonstrate any prejudice, such as a resulting loss of evidence or unavailability of witnesses. *See United States v. Bliss, supra,* 735 F.2d at 301; *United States v. Wells, supra,* 702 F.2d at 143. Therefore, we must reject Marchant's contention that preindictment delay denied him due process.

be received. *See United States v. Young,* 618 F.2d 1281, 1289 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980); *McConkey v. United States,* 444 F.2d 788, 790 (8th Cir.), *cert. denied,* 404 U.S. 885, 92 S.Ct. 223, 30 L.Ed.2d 168 (1971); *United States v. Prionas,* 438 F.2d 1049, 1054 (8th Cir.), *cert. denied,* 402 U.S. 977, 91 S.Ct. 1683, 29 L.Ed.2d 144 (1971). Further, the omissions of the sale proceeds occurred during the same years as those omissions resulting in Marchant's indictment. Therefore, the evidence of the house sales met the requirements for admissibility under Rule 404(b). Additionally, it cannot be said that the district court abused its discretion in ruling that the prejudicial effect of the evidence did not outweigh its probative value. *See* Fed.R.Evid. 403. Finally, the evidence properly served to impeach Marchant's direct testimony.

### D. Instructions.

Marchant asserts that the district court denied him the right to present his theory of the defense by refusing to give several requested jury instructions. A defendant in a criminal case is entitled to a specific instruction on his or her theory of the case if the requested instruction contains a correct statement of the law and is supported by evidence. *See, e.g., United States v. White,* 671 F.2d 1126, 1131 (8th Cir.1982); *United States v. Brake,* 596 F.2d 337, 339 (8th Cir.1979); *United States v. Hill,* 589 F.2d 1344, 1352 (8th Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *United States v. Rabbitt,* 583 F.2d 1014, 1024 (8th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The district court, however, is free "to use its own language in framing instructions." *United States v. Nance,* 502 F.2d 615, 619–20 (8th Cir.1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). The charge to the jury must adequately and correctly cover the substance of the requested instructions, but need not mimic the requested language. *See, e.g., United States v. Brake, supra,* 596 F.2d at 339; *United States v. Hill, supra,* 589 F.2d at 1352; *United*

*States v. Rabbitt, supra,* 583 F.2d at 1024; *United States v. Nance, supra,* 502 F.2d at 619. Moreover, the court may properly refuse to submit instructions on issues not in dispute at trial. *United States v. White, supra,* 671 F.2d at 1131.

In this case, the instructions to the jury adequately advised the jury on the substance of most of Marchant's proffered instructions. The court properly rejected Marchant's other tendered instructions not covered by its charge as relating to matters not in dispute, not supported by the facts, or irrelevant. The instructions adequately informed the jury of Marchant's theory of defense and enabled his counsel to make an adequate argument on the basis of that theory. Accordingly, we reject Marchant's contentions of error on instructions to the jury.

### E. Competency of Juror.

Finally, Marchant contends that the district court erred in failing to excuse a juror whose grandfather was dying. After its charge to the jury, the court asked whether the jurors had any reason to believe they could not give full and complete attention to the deliberations. One juror replied, "The only thing I know of, my grandpa is real sick in Russellville and not expected to live. Very long, you know." Marchant neither requested the court replace the juror with an alternate, nor objected when the court discharged the alternate. On appeal, Marchant argues that the juror's knowledge of his grandfather's imminent death may have pressured him into reaching a hasty verdict, thus depriving Marchant of his rights to due process and an impartial jury.

Even assuming that Marchant properly preserved the issue on appeal, we do not believe that the district court abused its discretion. The court was invested with wide discretion in determining the competency of jurors. *United States v. Key,* 717 F.2d 1206 (8th Cir.1983). Marchant has not produced any evidence showing that the

juror's anxiety over his grandfather's health rendered him incompetent to understand the issues and to conduct deliberations. Marchant notes only that the juror began crying when polled as to his verdict and continued to cry until he left the courtroom with other jurors. The tears of a juror may reflect a sympathetic nature, but standing alone would not demonstrate incompetency. We reject Marchant's claim.

## III. CONCLUSION.

We have examined the other issues including evidentiary matters raised by Marchant. These claims lack merit. The record reveals no prejudicial error in the trial of the case. Accordingly, we affirm.