**Keith M. BEATY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6760.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1955.

Decided March 24, 1955.

Writ of Certiorari Denied May 31, 1955. See 75 S.Ct. 874.

Paul R. Ervin, Charlotte, N. C., and Llewellyn A. Luce, Washington, D. C. (Frank W. Snepp, Jr., and W. M. Nicholson, Charlotte, N. C., on brief), for appellant.

James M. Baley, Jr., U. S. Atty., Asheville, N. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

On January 10, 1955 the Supreme Court of the United States considered petitions for writs of certiorari in this and eight other cases in which the Courts of Appeals had affirmed convictions of attempting to evade and defeat the income tax laws in violation of § 145 of the Internal Revenue Code, 26 U.S.C.A. § 145; and the Court vacated the judgments and remanded the cases to the Courts of Appeals for reconsideration in the light of its decisions in four other cases handed down on December 6, 1954, in each of which the prosecution had been based on the net worth method of proof.[1] The Supreme Court did not consider the merits of the cases remanded nor their relation to its recent opinions, but remanded them in the belief that reexamination by the Courts of Appeals was desirable even in those cases remotely involving the principles it had laid down. See 348 U.S. 905, 75 S.Ct. 311. The prior decision of this court in the pending case is found in 4 Cir., 213 F.2d 712.

▇▇ Accordingly the pending case was set for argument on March 7, with directions to the parties to file briefs restricted to the questions raised in the decisions of the Supreme Court; and in accordance with this order briefs have been filed and counsel have been heard. The principal contention now made on behalf of the defendant is that the Government made use of the net worth method of proof in the District Court but failed to establish "an opening net worth" or the total net value of the taxpayer's assets at the beginning of a given year, as required by the pronouncements of the Supreme Court. One ground for this contention was the introduction in evidence by witnesses for the United States of two statements dated December 31, 1944 and June 30, 1946 respectively,

1. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Calderon v. United States, 348 U.S. 160, 75 S.Ct. 186; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194.

which defendant had given to a brewery company as evidence of his financial status in connection with a purchase of merchandise. These statements showed an increase of net worth during the period of eighteen months in the amount of $145,800.10, and they were used as evidence tending to show that the net taxable income of the defendant was greater than that disclosed by his income tax reports for the years under examination.

The defendant contends that these statements were without probative force because it was also shown in the evidence that on May 26, 1943 and again on November 14, 1944 Beaty had deposited with a bank as collateral for loans stock of the value of $252,492, an amount in excess of those shown on the statements; and also because of the testimony of a government agent that he believed that Beaty had stocks in excess of those shown on the list of collateral deposited with the bank. Moreover, it is pointed out that the Government made no investigation as to the value of the stocks at the beginning and the end of the eighteen month period, and hence it is contended that the increase of net worth shown by the statements to the brewery company may have been occasioned by a rise in market prices.

The defendant also refers to the testimony of an internal revenue agent that defendant's expenditures exceeded his income by $32,885.60 in 1945 and $56,695.-67 in 1946; and that the agent in making his computation did not take into consideration that the defendant may have had money on hand on January 1, 1945, the beginning of the first year covered by the charges in the indictment, although there was evidence that prior to the indictment years the defendant put up as collateral for a loan with the bank $100,-000 at different times, and that $70,000 of this sum was released on March 20, 1945. The contention of the defendant in this respect is that the increase of expenditures over income during the tax periods may have been attributable to the cash on hand at the beginning of the period. There was, however, additional testimony on the part of the Government that the cash sums referred to were not used in making the expenditures listed in the computation. Reference is made in the prior opinion of this court, 213 F.2d 712, at page 720, to the fact that there was no explanation of the use of cash sums as collateral for the payment of cash loans.

In view of the comments of the Supreme Court in its recent decisions upon the need to establish an opening figure in prosecution for tax frauds based upon the net worth method, there would be substance in the defendant's contentions if the Government had depended on this method to sustain the charges contained in the indictment in this case. But the case was not tried on this theory. The revenue agents requested Beaty to furnish a net worth statement but he refused to do so and the agents did not attempt to prepare one themselves. The two statements to the brewery company were made by Beaty in the course of his liquor business and they were offered in evidence, together with testimony as to the excess of expenditures over reported income, and the deposit of large amounts of cash as collateral for bank loans, in corroboration of direct evidence tending to show an intentional failure on the part of the defendant to report his taxable income. The Government's case was built upon this direct testimony, as is shown in the prior opinion of this court. The Government relied on the disparity between the income reported and the income received by Beaty in the Beaty Service Company, and the failure of Beaty to report as his own taxable income the revenues from the Lancaster Distributing Company. There was abundant evidence to show that both of these enterprises were corporations in name only and that in each instance the business belonged to Beaty individually and that the income therefrom, which was nominally taken in the corporate name, was in fact taxable to Beaty individually.

There was presented to the jury the typical case of a tax evader engaged in profitable businesses whose records were

inadequate and confusing so that it became necessary for the Government agents to make investigations in many places in order to ascertain the actual facts. The agents were able to do this without resorting to the net worth method. They discovered in their investigations convincing evidence that Beaty collected large sums from his taxi and service business which he did not report in either his individual or corporate tax returns in the three years under investigation. It was also shown that during the same period large sales were made in the liquor business and large profits were made which would have substantially increased the taxable income of the defendant if they had been included as they should have been in his individual tax return.

Thus there was sufficient direct evidence of tax evasion on the part of the defendant to take the case to the jury; and the financial statements of net worth made in the course of his liquor business, and the excess of expenditures over reported income were used only as corroborating evidence of his failure to report all of his income for taxation. In this respect the case is somewhat similar to the decision of the Supreme Court in United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, one of the four decisions made on December 6, 1954, in which the judgment of conviction in the District Court was sustained. There the Government's case rested primarily on a net worth calculation in which the taxpayer was credited with $500 cash on hand at the starting point; but there was not sufficient evidence of the taxpayer's financial history to substantiate this figure directly. If there had been nothing more, the Government's case would have failed; but the record disclosed independent evidence tending to show that the taxpayer's assets greatly increased at a time when he was receiving large unrecorded amounts of income, and therefore the court concluded that the crime was established by the direct evidence without resort to the net worth method. We come to the same conclusion in this case and therefore, after reexamination of the evidence as directed by the Supreme Court, the judgment of the District Court will be again

Affirmed.